**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| DARREN COPELAND | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LEADERONE FINANCIAL CORPORATION, | ) | Case No. _____ |
| | ) | |
| MICHAEL STODDART, | ) | |
| | ) | |
| DAVID HOPPER, | ) | |
| | ) | |
| SHANE MOE, | ) | |
| | ) | |
| ANDY BLICKHAN, | ) | |
| | ) | |
| JONNY WAINSCOTT, | ) | |
| | ) | |
| STEVEN LIGHT, | ) | |
| | ) | |
| ADAM SCHWARTZ, | ) | |
| | ) | |
| MICHAEL BRADY | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BRENT DUHAIME, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

COMES NOW Plaintiff, Darren Copeland, for his claims for relief against Defendants

LeaderOne Financial Corporation, Michael Stoddart, David Hopper, Shane Moe, Andy Blickhan,

Jonny Wainscott, Steven Light, Adam Schwartz, Michael Brady and Brent Duhaime, and states

as follows:

## PARTIES

1.     Plaintiff Darren Copeland ("Copeland" or "Plaintiff") is a real person and resident of the State of Missouri with a residential address at 6126 N.E. Upper Wood Road, Lee's Summit, Missouri 64064, and a business address at all times relevant of 4967 B N.E. Upper Wood Road, Lee's Summit, Missouri 64064.

2.     Defendant LeaderOne Financial Corporation ("LeaderOne" or the "Corporation") is a Kansas corporation in good standing engaged in the business of originating, selling and servicing residential mortgage loans, with a principal place of business at all times relevant at 7500 College Blvd., Ste. 1150, Overland Park, Kansas 66210 (current) or 11020 King Street, Ste. 390, Overland Park, Kansas 66210 (past).

3.     Defendant Michael Stoddart ("Stoddart"), upon information and belief, is a citizen of the State of Kansas, and is being sued in his capacity as the Chief Executive Officer, President and Chief Operating Officer of LeaderOne, and a stockholder of LeaderOne, with a place of business at all times relevant at 7500 College Blvd., Ste. 1150, Overland Park, Kansas 66210 or 11020 King Street, Ste. 390, Overland Park, Kansas 66210.

4.     Defendant David Hopper ("Hopper"), upon information and belief, is a citizen of the State of Kansas, and is being sued in his capacity as a Vice President and the Executive Vice President of Production, Chairman of the Board of LeaderOne, and a stockholder of LeaderOne, with a place of business at all times relevant at 7500 College Blvd., Ste. 1150, Overland Park, Kansas 66210 or 11020 King Street, Ste. 390, Overland Park, Kansas 66210.

5.     Defendant Shane Moe ("Moe"), upon information and belief, is a citizen of the State of Texas, and is being sued in his capacity as a Senior Vice President, a director of LeaderOne serving on the board of directors of LeaderOne (the "Board"), and a stockholder of

LeaderOne, with a place of business at all times relevant at 5316 Highway 290 West, Ste. 560, Austin, Texas 78735.

6.      Defendant Andy Blickhan ("Blickhan"), upon information and belief, is a citizen of the State of Missouri, and is being sued in his capacity as a Senior Vice President of LeaderOne, a director serving on the Board, and a stockholder of LeaderOne, with a place of business at all times relevant at 141 Triad West Drive, O'Fallon, Missouri 63366.

7.      Defendant Jonny Wainscott ("Wainscott"), upon information and belief, is a citizen of the State of Kansas, and is being sued in his capacity as a Senior Vice President of LeaderOne, a director serving on the Board, and a stockholder of LeaderOne, with a place of business at all times relevant at 10801 Mastin Blvd., Ste. 740, Overland Park, Kansas 66210.

8.      Defendant Steven Light ("Light"), upon information and belief, is a citizen of the State of Kansas, and is being sued in his capacity as Chief Production Officer of LeaderOne, a director serving on the Board, and a stockholder of LeaderOne, with a place of business at all times relevant at 7500 College Blvd., Ste. 1150, Overland Park, Kansas 66210 or 11020 King Street, Ste. 390, Overland Park, Kansas 66210.

9.      Defendant Adam Schwartz ("Schwartz"), upon information and belief, is a citizen of the State of Kansas, and is being sued in his capacity as the Chief Financial Officer of LeaderOne, Treasurer of LeaderOne, and a stockholder of LeaderOne, with a place of business at all times relevant at 7500 College Blvd., Ste. 1150, Overland Park, Kansas 66210 or 11020 King Street, Ste. 390, Overland Park, Kansas 66210.

10.     Defendant Michael Brady ("Brady"), upon information and belief, is a citizen of the State of Kansas, and is being sued in his capacity as the Chief Information Officer, Secretary of LeaderOne, and a stockholder of LeaderOne, with a place of business at all times relevant at

7500 College Blvd., Ste. 1150, Overland Park, Kansas 66210 or 11020 King Street, Ste. 390, Overland Park, Kansas 66210.

11. Defendant Brent Duhaime ("Duhaime", and together with LeaderOne, Stoddart, Moe, Blickhan, Wainscott, Light, Schwartz and Brady, the "Defendants", and each, individually, a "Defendant"), upon information and belief, is a citizen of the State of Texas, and is being sued in his capacity as a former Chief Production Officer and Vice President of LeaderOne, former director serving on the Board, and a stockholder of LeaderOne, with a place of business at all times relevant at 9300 John Hickman Pkwy., Suite 1304, Frisco, Texas 75035.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over Defendants because Defendants solicited and offered to sell and sold securities to Plaintiff while he was within the State of Missouri; Plaintiff received solicitations and offers from Defendants and purchased LeaderOne securities while within the State of Missouri; Defendants transacted and/or continue to transact business and securities solicitations and offerings in the State of Missouri; and the preponderance of the facts giving rise to the causes of action in this Complaint took place in the State of Missouri and in the Western District of Missouri.

13. The jurisdiction of this Court and venue in this district are proper under 28 U.S.C. § 1331 because multiple counts in this action arise pursuant to the laws of the United States including, without limitation, the Securities Act of 1933, as amended (the "Securities Act") (15 U.S.C. § 77a *et seq.*), and the Securities and Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. § 78a *et seq.*).

14. The jurisdiction of this Court and venue in this district are proper under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different States and the matter in controversy

exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000).

## TIMELINESS OF FILING

15.     This action is timely filed pursuant to Section 13 of the Securities Act, 15 U.S.C. § 77m.

16.     This action is timely filed pursuant to § 409.5-509(j) RSMo of the Missouri Securities Act of 2003, § 409.1-101 RSMo *et seq*. (the "Missouri Securities Act").

17.     This action is timely filed pursuant to K.S.A. 17-12a509(j) of the Kansas Uniform Securities Act, 17-12a101 *et seq*. (the "Kansas Securities Act").

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

18.     Plaintiff was employed by LeaderOne holding the title of "Assistant Vice President" from May 2009 to January 11, 2019, on which date Plaintiff resigned.

19.     Plaintiff's major job function was to generate residential mortgage loans.

20.     At no time was Plaintiff an officer or director of LeaderOne.

21.     Plaintiff purchased stock of LeaderOne on the following dates:

     a.     June 28, 2018

     b.     January 24, 2018

     c.     April 21, 2017

     d.     March 3, 2017

     e.     February 1, 2016

     f.     December 31, 2008

22.     Plaintiff is a stockholder of LeaderOne, holding 30,628 shares of common stock of LeaderOne.

23.     Plaintiff paid cash for his stock in LeaderOne both to LeaderOne and to sellers of

LeaderOne stock presented to him by LeaderOne.

24. Plaintiff was not sold, and did not purchase, his stock in LeaderOne as part of a written compensatory plan or contract pertaining to grants and sales of stock to employees, officers and directors.

25. If such a written compensatory plan or contract pertaining to grants and sales of stock to employees, officers and directors ever existed, Plaintiff was never provided a copy of the plan or contract.

26. LeaderOne does not have, nor has it ever had, an employee stock ownership plan or any written, compensatory employee, officer or director stock grant or purchase plan or contract.

27. If such a written employee stock ownership plan or any written, compensatory employee, officer or director stock grant or purchase plan or contract ever existed, LeaderOne did not provide a copy of the plan or contract to any purchaser of LeaderOne stock.

28. Plaintiff's direct knowledge of the financial performance, actual or potential liabilities, or future prospects of LeaderOne were confined to matters within his own division and communications he received as a stockholder of LeaderOne.

29. During his employment with LeaderOne, Plaintiff had no knowledge of Corporation-wide operations, financial performance, actual or potential liabilities, or future prospects of LeaderOne.

30. Plaintiff was not an "accredited investor," as that term is defined in Rule 501 of the Securities Act, 17 C.F.R. § 230.501, at the time of purchase of his LeaderOne stock.

31. Plaintiff was not and is not a sophisticated or experienced investor, as described in 17 C.F.R. § 230.506(b)(2)(ii).

32.     All solicitations and offers to sell or purchase stock of LeaderOne, whether the offer was from LeaderOne itself or from existing stockholders, were transmitted by Defendants from Kansas utilizing U.S. mail, electronic mail, and other means of interstate commerce.

33.     Defendants have granted, solicited, offered to sell and sold, and offered to purchase and purchased, its own stock and LeaderOne stock owned by others utilizing U.S. mail, electronic mail, and other means of interstate commerce into multiple states including, without limitation, Kansas, Missouri, Texas, Washington, Arizona, Minnesota and Georgia.

34.     The stock of LeaderOne is a "security" as defined in federal and state securities laws.

35.     LeaderOne stock is a "security" because the cash paid for LeaderOne stock is an investment of money in a common enterprise with an expectation of profits from the investment that comes from the efforts of a others.

36.     LeaderOne is an "issuer" of stock.

37.     Upon information and belief, Defendant Stoddart owns 334 shares of stock in LeaderOne.

38.     Upon information and belief, Defendant Hopper owns in excess of 100,000 shares of stock in LeaderOne, which is more than 5% of the authorized stock of LeaderOne.

39.     Upon information and belief, Defendant Moe owns 216,710 shares of stock in LeaderOne, which is more than 5% of the authorized stock of LeaderOne.

40.     Upon information and belief, Defendant Blickhan owns 119,500 shares of stock in LeaderOne, which is more than 5% of the authorized stock of LeaderOne.

41.     Upon information and belief, Defendant Wainscott owns 132,561 shares of stock in LeaderOne, which is more than 5% of the authorized stock of LeaderOne.

42.     Upon information and belief, Defendant Light owns 50 shares of stock in LeaderOne.

43.     Upon information and belief, Defendant Schwartz owns 334 shares of stock in LeaderOne.

44.     Upon information and belief, Defendant Brady owns 5,103 shares of stock in LeaderOne.

45.     Upon information and belief, Defendant Duhaime owns 195,000 shares of stock in LeaderOne, which is more than 5% of the authorized stock of LeaderOne.

46.     Defendants Stoddart, Schwartz and Brady are officers of LeaderOne, and Defendants Hopper, Moe, Wainscott, Blickhan, Light are directors of LeaderOne and serve on the Board.

47.     Defendant Hopper is currently represented by LeaderOne to be, and he currently represents himself to be, "Chairman of the Board" of LeaderOne, but Hopper is not listed as a director or officer on any LeaderOne annual report filed with the Kansas Secretary of State after 2014.

48.     Non-Defendant Director Taryn Reuter is an employee of LeaderOne, can be fired, subjected to workplace discipline, or have her salary, commissions and bonus unilaterally altered by Defendants, and is therefore not independent of the Defendants.

49.     Non-Defendant Director Scott Evans is an employee of LeaderOne, can be fired, subjected to workplace discipline, or have his salary, commissions and bonus unilaterally altered by Defendants, and is therefore not independent of the Defendants.

50.     Non-Defendant Director Shelly Hill is an employee of LeaderOne, can be fired, subjected to workplace discipline, or have her salary, commissions and bonus unilaterally altered

by Defendants, and is therefore not independent of the Defendants.

51. Non-Defendant Director Todd Leddon is an employee of LeaderOne, can be fired, subjected to workplace discipline, or have his salary, commissions and bonus unilaterally altered by Defendants, and is therefore not independent of the Defendants.

52. Non-Defendant Director Charles Price is an employee of LeaderOne, can be fired, subjected to workplace discipline, or have his salary, commissions and bonus unilaterally altered by Defendants, and is therefore not independent of the Defendants.

53. The Non-Defendant Directors are not independent of Defendants, but are instead conflicted by financial and disciplinary relationships including, without limitation, employment, compensation, and the expectation of grants of stock of LeaderOne that leave them financially or otherwise vulnerable should they not comport with the desires of Defendants.

54. LeaderOne has no independent directors on its Board.

55. The other stockholders of LeaderOne are employees and not independent of the Defendants, but are instead conflicted by financial and disciplinary relationships including, without limitation, Defendants' control of their employment, compensation, work conditions, reimbursements, access to staff and other workplace considerations that leave them financially or otherwise vulnerable should they not comport with the desires of the Defendants.

56. Because the stockholders and potential stockholders of LeaderOne are not independent of Defendants' and the Directors, even matters subject to stockholder votes are a sham for the wishes and desires of the Defendants.

57. The Defendants are in direct and/or indirect control of LeaderOne by virtue of their officer or director positions within LeaderOne, by virtue of their dominion and control over the Directors, stockholders of LeaderOne, and as a group comprise the largest block of

stockholders in LeaderOne.

58.     The Defendants are in direct and/or indirect control of LeaderOne because they possess the power to direct or cause the direction of the management and policies of LeaderOne.

59.     Through their material acts and omissions, the Defendants became culpable participants in LeaderOne's securities fraud causing damages to Plaintiff.

60.     Defendants have been granted significant portions of their personal stock holdings in LeaderOne.

61.     Unlike Plaintiff, Defendants who are officers and directors did not pay cash for all or most of their holdings of LeaderOne stock.

62.     With the help and assistance of LeaderOne, the Defendants sell their LeaderOne stock to other employees of LeaderOne, like Plaintiff, for cash and personal gain.

63.     The Defendants are privy to financial, revenue, liability and other material, non-public information about LeaderOne, its performance and prospects that is unavailable to other LeaderOne employees, stockholders and potential stockholders.

64.     Upon information and belief, the Defendants solicit, offer, sell, purchase and trade LeaderOne stock based upon this material, non-public information to raise general operating capital for LeaderOne and for their personal gain.

65.     The granting of LeaderOne stock to officers and directors, while employees like Plaintiff pay for their stock in cash, operates as a scheme or artifice to defraud investors and a manipulative and deceptive practice.

67.     LeaderOne solicits, offers, sells and purchases its own stock solely at the discretion of the officers and directors of LeaderOne.

68.     LeaderOne operates a secondary market in its own stock to match sellers and

potential buyers of LeaderOne stock.

69.     LeaderOne operates this secondary market in its own stock for the financial benefit of the Defendants.

70.     LeaderOne has a written "stock liquidity plan" through which LeaderOne offers to purchase, and purchases, a certain number of shares at a certain price at the sole discretion of the officers and directors.

71.     In practice, LeaderOne offers to purchase stock through the stock liquidity plan at a lower price per share than it offers its stock for sale.

72.     Other than offers to purchase stock from existing stockholders, there is no market for LeaderOne stock other than pursuant to the stock liquidity plan.

73.     LeaderOne's employment agreements do not contemplate stock solicitations, offers, purchases or sales to employees as part of their compensation.

74.     LeaderOne does not know whether stockholders or potential stockholders it solicits, offers and sells securities to are "accredited investors," as that term is defined in Rule 501(a) of the Securities Act, 17 C.F.R. § 230.501, because it undertook no effort to take adequate precautions that purchasers of its stock were so accredited.

75.     One of the purposes of LeaderOne's solicitations and securities offerings for cash are to raise capital for general operational purposes.

76.     One of the purposes of LeaderOne's solicitations and securities offerings for cash are to raise capital for a generalized, undefined "expansion."

77.     One of the purposes of LeaderOne's facilitation of the sale of stock of the stockholders and administration of the stock liquidity program is to make a market for the stock for the immediate corporate and personal gain of the Defendants to the detriment of other

stockholders.

78.     One of the purposes of LeaderOne's facilitation of the sale of stock of the stockholders and administration of the stock liquidity program is to make a market for the stock to manipulate the price at which Defendants can issue, solicit, offer, sell or purchase LeaderOne stock.

79.     In practice, Defendants utilize their control over selling stockholders and the stock liquidity program to manipulate the price of the stock so they can issue or sell Defendants' stock for higher prices than other selling stockholders.

80.     LeaderOne did not utilize reasonable care in determining whether purchasers and sellers of LeaderOne stock are underwriters, brokers, dealers, accredited investors or sophisticated parties.

81.     LeaderOne did not exercise reasonable care in determining whether purchasers of LeaderOne stock were doing so with an eye to resell.

82.     At no time has LeaderOne has made a filing for registration with, or an exemption for, its solicitations, offers, sales and purchases of stock with any securities regulator including, without limitation, the Securities and Exchange Commission ("SEC"), the Office of the Kansas Securities Commissioner ("KSC"), or the Missouri Securities Division of the Missouri Secretary of State ("MSD").

83.     No LeaderOne securities registration statement was on file and effective with any securities regulator including, without limitation, the SEC, KSC or MSD, upon any date on which LeaderOne securities were solicited, offered, sold or purchased.

84.     LeaderOne was negligent, reckless, grossly negligent and/or deliberately reckless with respect to determining whether LeaderOne complied with federal and state securities laws.

85. None of Plaintiff's shares of LeaderOne ever solicited, offered or sold to Plaintiff by LeaderOne or its stockholders were "federal covered securities" at the time of solicitation, offer, sale or purchase, as that term is defined in Section 16(f)(3) of the Securities Act, 15 U.S.C. § 77p(f)(3).

86. LeaderOne has engaged in multiple unregistered, non-exempt securities solicitations, offerings, sales and purchases during and since 2016 to the present.

87. LeaderOne solicited, issued, offered, sold or purchased unregistered LeaderOne stock, without limitation, on or about the following dates:

    a.    June 28, 2018

    b.    June 15, 2018

    c.    June 7, 2018

    d.    June 1, 2018

    e.    May 2, 2018

    f.    January 24, 2018

88. LeaderOne had a legal duty under federal and state law to any buyer or seller of LeaderOne securities to provide information in a prospectus or offering memorandum with information about the LeaderOne sufficient for the stockholder or prospective stockholder to make an informed decision about whether to purchase or sell LeaderOne stock, which includes a private placement memorandum and audited financials.

89. No transactions in LeaderOne securities are exempt from the antifraud, civil liability, or other provisions of the federal and state securities laws.

90. Defendants have an obligation to provide investors with disclosure adequate to satisfy the antifraud provisions of the federal and state securities laws.

91. Only once did Defendants provide a prospectus, private placement memorandum, audited financials or similar disclosure documents with information about LeaderOne in conjunction with any solicitation, offer, sale or purchase of LeaderOne stock.

92. The single prospectus distributed to buyers and sellers of LeaderOne stock, "Offering Circular #7" (the "prospectus"), was clearly not complete or accurate, and contains many inaccuracies.

93. This single prospectus omitted disclosure of material information that was necessary in order to make the prospectus not misleading.

94. The single set of audited financials distributed to buyers and sellers of LeaderOne stock contained material misrepresentations and omissions because the disclosure of information by Defendants to the auditors was inaccurate, and Defendants failed to disclose material information necessary for the auditors to do their job.

95. In connection with LeaderOne's solicitation, offer, sale and purchase of securities, LeaderOne failed to disclose to investors and auditors the material fact that it was not in substantial compliance with federal and state securities laws, and that the failure to do so could cost LeaderOne millions of dollars in fines, lead to the disqualification and banning of key executives and leaders of critical revenue divisions from working in the financial services industry ever again, and the accompanying threat to short- and long-term revenues from the same.

96. In connection with LeaderOne's solicitation, offer, sale and purchase of securities, Defendants failed to disclose to investors and auditors the material fact of its knowledge of mismanagement that since 2016 to the present was leading to at least six (6) key loan officers not being paid their salary and commissions, and which had the great potential to lead to massive

litigation and liability, leading to millions of dollars in claims, lost revenue, and legal fees in defense of the same.

97. In connection with LeaderOne's solicitation, offer, sale and purchase of securities, Defendants failed to disclose to investors and auditors the material fact of details of its planned "expansion," one of the stated purposes of LeaderOne's solicitations, offerings, purchases and sales of its securities.

98. In connection with LeaderOne's solicitation, offer, sale and purchase of securities, Defendants failed to disclose to investors and auditors the material fact of why, in the middle of a housing boom, it needed to raise operating revenue, one of the stated purposes of LeaderOne's solicitations, offerings, purchases and sales of its securities.

99. The Defendant Officers and Directors did not fully disclose to investors and auditors the material fact that the reason LeaderOne needed cash is because its financial performance was declining.

100. In connection with LeaderOne's solicitation, offer, sale and purchase of securities, Defendants failed to disclose to investors and auditors the material fact that Defendants had in fact captured the management of LeaderOne by consolidating the roles and powers of officers, directors and stockholders into the hands of Defendants and that LeaderOne was now being operated for Defendants' benefit and to the detriment of the other stockholders, and failed to disclose the potential and actual conflicts of interest of Defendants and the other stockholders.

101. In connection with LeaderOne's solicitation, offer, sale and purchase of securities, Defendants failed to disclose the material fact that it had entered into promissory notes with at least three (3) former stockholders totaling over $1.6 million dollars, including years in which it offered and sold securities to Plaintiff.

102.     In connection with LeaderOne's solicitation, offer, sale and purchase of securities, Defendants failed to disclose to investors and auditors the material fact of what happened to the LeaderOne stock it received in return for issuance of the promissory notes to the former stockholders and how the stock was distributed thereafter, if at all.

103.     In connection with LeaderOne's solicitation, offer, sale and purchase of securities, Defendants failed to disclose to investors the material fact that it has an investment in a private company and how long it had held the investment, nor did it disclose details of the size of the investment, its performance over time, what the private company does, its name, its revenues, what percent of the private company LeaderOne owns, the purpose of and strategy behind LeaderOne's investment in it, or any other details other than the fact that the investment lost money (but not how much it lost) and that LeaderOne did not recognize the losses during 2017.

104.     In connection with LeaderOne's solicitation, offer, sale and purchase of securities, Defendants failed to disclose to investors the material facts about how much stock has been granted to officers and directors and sold to employees, and to whom such grants and sales were made and on what basis.

105.     In connection with LeaderOne's solicitation, offer, sale and purchase of securities, LeaderOne failed to disclose to investors the material fact that it had authorized 3,000,000 shares of preferred stock, even though no filing with the Kansas Secretary of State confirms this.

106.     In connection with LeaderOne's solicitation, offer, sale and purchase of securities, LeaderOne failed to disclose the material fact of its plans for distribution of the 3,000,000 shares of preferred stock.

107.     During and since 2016 to the present, there has not been a six (6) month period of time before or after a LeaderOne stock solicitation, offering, purchase or sale during which no

LeaderOne securities were solicited, offered, purchased or sold.

108.    LeaderOne's securities solicitations, offers, sales and purchases together constitute a single, ongoing, integrated solicitation and offering of securities lasting during and since 2016 to the present.

109.    During a February 2018 sales meeting in Hawaii, in his capacity as President and Chief Executive Officer of LeaderOne, Stoddart addressed a crowd of "top performing" LeaderOne salespersons pumping the prospects of LeaderOne and announcing they are being offered stock from LeaderOne, all except for Plaintiff and Mr. Allen Price, a loan officer located in Seattle, Washington.

110.    Defendant Stoddart never provided a reason why he prevented Plaintiff and Mr. Allen from purchasing stock.

111.    Defendant Stoddart's omission of Plaintiff and Mr. Price underlies the arbitrary and capricious method Defendants utilize to decide who may purchase LeaderOne stock.

112.    LeaderOne facilitated the solicitation, offering, purchase and sale of its own stock between and amongst LeaderOne, current stockholders and future stockholders of LeaderOne by communicating with current and prospective stockholders that certain stock was for sale by certain parties at certain prices, then facilitated and coordinated the parties to complete the stock transactions.

113.    Defendant Brady facilitated the solicitation, offering, purchase and sale of LeaderOne stock by e-mailing and mailing securities solicitations and information to prospective purchasers of LeaderOne stock, and by completing the sale and purchase of LeaderOne stock between and among LeaderOne and its stockholders and potential stockholders.

114.    LeaderOne's coordination included, without limitation, circulation of misleading

and incomplete offering information, coordinating payment for the stock between and among itself and other parties, and canceling the stock certificates of and issuing new stock certificates to purchasers.

115. Defendants failed to utilize the services of an independent, third-party stock transfer agent that would have served as a check and balance on LeaderOne's breach of federal and state securities laws and its own organizational documents and Stockholder's Agreement.

116. LeaderOne did not print the following legend disclaimer ("legend") on its stock certificates as required by its own Shareholder's Agreement and by applicable law:

> THE TRANSFER OF THE SHARES OF STOCK REPRESENTED BY THIS CERTIFICATE IS RESTRICTED UNDER THE TERMS OF THE AMENDED AND RESTATED SHAREHOLDERS AGREEMENT DATED DECEMBER 31, 2008, AS AMENDED OR RESTATED, A COPY OF WHICH IS ON FILE AT THE OFFICES OF THE CORPORATION.

> THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933. THEY MAY NOT BE SOLD OR OFFERED FOR SALE IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT AS TO THE SECURITIES UNDER THE ACT OR AN OPINION FROM COUNSEL SATISFACTORY TO THE CORPORATION THAT SUCH REGISTRATION IS NOT REQUIRED.

117. LeaderOne solicited, offered, sold, resold and purchased stock without regard to compliance with Rule 144 of the Securities Act, 17 C.F.R. § 230.144, nor did it notify offerees, sellers or purchasers of LeaderOne stock that they had a statutory and contractual obligation to comply with Rule 144.

118. Because LeaderOne failed to include the restrictive legend on its stock certificates, offerees, sellers and purchasers were not aware that they had a duty to inquire about compliance with Rule 144 and other stock transfer restrictions, including those within the Shareholders Agreement.

119. LeaderOne did not require that solicitations, offers, resales and purchases of stock

comply with Rule 144.

120.    LeaderOne solicited and facilitated transactions between and among itself and other stockholders and potential stockholders without regard to transfer restrictions found in contract or federal or state statute including, without limitation, Rule 144.

121.    In December 2018, LeaderOne requested that all of its current stockholders provide LeaderOne with copies of their stock certificates because it did not know how much of its stock was issued and outstanding, nor who its stockholders really were, nor how many shares individual stockholders owned.

122.    LeaderOne could not have complied with Rule 144 because it did not even know who owned how much stock and how long they had held it.

123.    As a stockholder of LeaderOne, Plaintiff made demand upon LeaderOne by and through legal counsel to disclose which securities laws exemptions it relies upon, but LeaderOne did not substantively reply.

## COUNT I
### Sale of Unregistered Securities
### Section 5 of the Securities Act (15 U.S.C § 77e)

124.    Plaintiff hereby incorporates paragraphs 1 through 123 by reference as though fully set forth herein.

125.    A securities registration statement covering solicitations, offers, sales and purchases of LeaderOne securities was not filed with the SEC or in effect during any securities transaction in which Plaintiff purchased LeaderOne securities.

126.    LeaderOne's securities were not exempt from registration, nor were any transactions in which Plaintiff purchased securities of LeaderOne exempt from registration.

WHEREFORE, Plaintiff prays that this Court enter a judgement in its favor and against

Defendants for rescission of the transactions involving improperly-offered securities and return of the price paid for the securities plus interest thereon or, in the alternative, for damages in an amount to be determined at trial, together with Plaintiff's court costs, expenses, and attorneys' fees, and grant such other relief as this Court deems appropriate.

### COUNT II
**Manipulative and Deceptive Acts and Omissions**
**Section 10(b) of the Exchange Act and Rule 10b-5**
**(15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b5)**

127.     Plaintiff incorporates paragraphs 1 through 126 by reference as though fully set forth herein.

128.     Defendants employed a device, scheme or artifice to defraud Plaintiff and other sellers and purchasers of LeaderOne securities.

129.     Defendants made misstatements and/or omissions of material facts.

130.     Defendants engaged in acts, practices and courses of business which operated as a fraud or deceit upon Plaintiff and other purchasers and sellers of LeaderOne securities.

131.     In engaging in this course of conduct, Defendants violated Rule 10b5, 17 C.F.R. § 240.10b5.

132.     Defendants' conduct caused loss and harm to Plaintiff.

WHEREFORE, Plaintiff prays that this Court enter a judgement in its favor and against Defendants for rescission of the transactions involving improperly-offered securities and return of the price paid for the securities plus interest thereon or, in the alternative, for damages in an amount to be determined at trial, together with Plaintiff's court costs, expenses, and attorneys' fees, and grant such other relief as this Court deems appropriate.

### COUNT III
**Trading Upon Material Non-Public Information**
**Section 10(b) of the Exchange Act and Rule 10b-5-1**

**(15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b5-1)**

133.     Plaintiff incorporates paragraphs 1 through 132 by reference as though fully set forth herein.

134.     Defendants employed a device, scheme or artifice to defraud Plaintiff and other sellers and purchasers of LeaderOne securities.

135.     Defendants made misstatements and/or omissions of material facts.

136.     Defendants engaged in acts, practices and courses of business which operated as a fraud or deceit upon Plaintiff and other purchasers and sellers of LeaderOne securities in that Defendants traded securities based upon material

137.     In engaging in this course of conduct, Defendants violated Rule 10b5-1, 17 C.F.R. § 240.10b5-1.

138.     Defendants' conduct caused loss and harm to Plaintiff.

WHEREFORE, Plaintiff prays that this Court enter a judgement in its favor and against Defendants for rescission of the transactions involving improperly-offered securities and return of the price paid for the securities plus interest thereon or, in the alternative, for damages in an amount to be determined at trial, together with Plaintiff's court costs, expenses, and attorneys' fees, and grant such other relief as this Court deems appropriate.

<u>COUNT IV</u>
**Violation of Section 5 of the Securities Act –**
**Section 12(a)(1) of the Securities Act (15 U.S.C § 77l(a)(1))**

139.     Plaintiff incorporates paragraphs 1 through 138 by reference as though fully set forth herein.

140.     A registration statement covering LeaderOne securities was not in effect.

141.     Defendants solicited, offered and sold LeaderOne securities to the Plaintiff with a

prospectus or oral communication which includes an untrue statement of a material fact and/or omits to state a material fact necessary in order to make Defendants' statements, in the light of the circumstances under which they were made, not misleading.

142.     The mails or facilities of interstate commerce were used in connection with Defendants' solicitation, offer and sale of LeaderOne securities to Plaintiff.

143.     Defendants' conduct caused loss and harm to Plaintiff.

144.     This action is timely under the statute of limitations in Section 13 of the Securities Act, 15 U.S.C. § 77m.

WHEREFORE, Plaintiff prays that this Court enter a judgement in its favor and against Defendants for rescission of the transactions involving improperly-offered securities and return of the price paid for the securities plus interest thereon or, in the alternative, for damages in an amount to be determined at trial, together with Plaintiff's court costs, expenses, and attorneys' fees, and grant such other relief as this Court deems appropriate.

## COUNT V
### Misstatement or Omission of Material Facts
### Section 12(a)(2) of the Securities Act (15 U.S.C § 77l(a)(2))

145.     Plaintiff incorporates paragraphs 1 through 144 by reference as though fully set forth herein.

146.     Defendants solicited, offered and sold LeaderOne securities to Plaintiff.

147.     This action is timely under the statute of limitations in Section 13 of the Securities Act, 15 U.S.C. § 77m.

148.     The sale of LeaderOne securities occurred through the mails and means of interstate commerce.

149.     The sale of securities was made through a prospectus or oral communication of

Defendants that included an untrue statement of material fact and/or omitted to state a material fact.

150.    The Plaintiff did not know of the untrue statements and/or omissions of Defendants when he purchased securities of LeaderOne.

151.    Defendants' conduct caused loss and harm to Plaintiff.

WHEREFORE, Plaintiff prays that this Court enter a judgement in its favor and against Defendants for rescission of the transactions involving improperly-offered securities and return of the price paid for the securities plus interest thereon or, in the alternative, for damages in an amount to be determined at trial, together with Plaintiff's court costs, expenses, and attorneys' fees, and grant such other relief as this Court deems appropriate.

## COUNT VI
### Control Person Liability for Violation of Section 12 of the Securities Act
### Section 15 of the Securities Act (15 U.S.C § 77o)

152.    Plaintiff incorporates paragraphs 1 through 151 by reference as though fully set forth herein.

153.    As set forth above, Defendants are liable for violations of the Securities Act and the Exchange Act.

154.    Defendants controlled LeaderOne.

155.    Defendants became culpable participants in LeaderOne's fraud.

156.    Defendants' conduct caused loss and harm to Plaintiff.

WHEREFORE, Plaintiff prays that this Court enter a judgement in its favor and against Defendants for rescission of the transactions involving improperly-offered securities and return of the price paid for the securities plus interest thereon or, in the alternative, for damages in an amount to be determined at trial, together with Plaintiff's court costs, expenses, and attorneys'

fees, and grant such other relief as this Court deems appropriate.

## COUNT VII
### Control Person Liability for Violation of the Exchange Act
### Section 20(a) of the Exchange Act (15 U.S.C § 78t(a))

157.    Plaintiff incorporates paragraphs 1 through 156 by reference as though fully set forth herein.

158.    As set forth above, Defendants are liable for violations of the Securities Act and the Exchange Act.

159.    Defendants controlled LeaderOne.

160.    Defendants became culpable participants in LeaderOne's fraud.

161.    Defendants' conduct caused loss and harm to Plaintiff.

WHEREFORE, Plaintiff prays that this Court enter a judgement in its favor and against Defendants for rescission of the transactions involving improperly-offered securities and return of the price paid for the securities plus interest thereon or, in the alternative, for damages in an amount to be determined at trial, together with Plaintiff's court costs, expenses, and attorneys' fees, and grant such other relief as this Court deems appropriate.

## COUNT VIII
### Sale of an Unregistered Security in Violation of the Missouri Securities Act
### Mo. Rev. Stat. § 490.5-509(b)

162.    Plaintiff incorporates paragraphs 1 through 161 by reference as though fully set forth herein.

163.    Defendant LeaderOne sold an unregistered, non-exempt securities in violation of the Missouri Securities Act, § 490.3-301 RSMo.

164.    A securities registration statement covering solicitations, offers, sales and purchases of LeaderOne securities was not filed with the MSD or in effect during any securities

transaction in which Plaintiff purchased LeaderOne securities.

165.    LeaderOne's securities were not exempt from registration, nor were any transactions in which Plaintiff purchased securities of LeaderOne exempt from registration.

WHEREFORE, Plaintiff prays that this Court enter a judgement in its favor and against Defendants for rescission of the transactions involving improperly-offered securities and return of the price paid for the securities plus interest thereon or, in the alternative, for damages in an amount to be determined at trial, together with Plaintiff's court costs, expenses, and attorneys' fees, and grant such other relief as this Court deems appropriate.

## COUNT IX
### Joint and Several Liability for Violation of the Missouri Securities Act
### Mo. Rev. Stat. § 490.5-509(g)

166.    Plaintiff incorporates paragraphs 1 through 165 by reference as though fully set forth herein.

167.    Defendant LeaderOne sold an unregistered, non-exempt securities in violation of the Missouri Securities Act, § 490.3-301 RSMo.

168.    As set forth above, Defendants are liable for violations of the Missouri Securities Act.

169.    Defendants controlled LeaderOne.

170.    Defendants became culpable participants in LeaderOne's fraud.

171.    Defendants' conduct caused loss and harm to Plaintiff.

WHEREFORE, Plaintiff prays that this Court enter a judgement in its favor and against Defendants for rescission of the transactions involving improperly-offered securities and return of the price paid for the securities plus interest thereon or, in the alternative, for damages in an amount to be determined at trial, together with Plaintiff's court costs, expenses, and attorneys'

fees, and grant such other relief as this Court deems appropriate.

## COUNT X
### Sale of an Unregistered Security in Violation of the Kansas Securities Act
### K.S.A. § 17-12a509(b)

172.    Plaintiff incorporates paragraphs 1 through 171 by reference as though fully set forth herein.

173.    LeaderOne sold unregistered, non-exempt securities in violation of the Kansas Securities Act, K.S.A. 17-12a301.

174.    A securities registration statement covering solicitations, offers, sales and purchases of LeaderOne securities was not filed with KSC or in effect during any securities transaction in which Plaintiff purchased LeaderOne securities.

175.    LeaderOne's securities were not exempt from registration, nor were any transactions in which Plaintiff purchased securities of LeaderOne exempt from registration.

WHEREFORE, Plaintiff prays that this Court enter a judgement in its favor and against Defendants for rescission of the transactions involving improperly-offered securities and return of the price paid for the securities plus interest thereon or, in the alternative, for damages in an amount to be determined at trial, together with Plaintiff's court costs, expenses, and attorneys' fees, and grant such other relief as this Court deems appropriate.

## COUNT XI
### Joint and Several Liability for Violation of the Kansas Securities Act
### K.S.A. § 17-12a509(g)

176.    Plaintiff incorporates paragraphs 1 through 175 by reference as though fully set forth herein.

177.    LeaderOne sold unregistered, non-exempt securities in violation of the Kansas Securities Act, K.S.A. 17-12a301.

178. As set forth above, Defendants are liable for violations of the Kansas Securities Act.

179. Defendants controlled LeaderOne.

180. Defendants became culpable participants in LeaderOne's fraud.

181. Defendants' conduct caused loss and harm to Plaintiff.

WHEREFORE, Plaintiff prays that this Court enter a judgement in its favor and against Defendants for rescission of the transactions involving improperly-offered securities and return of the price paid for the securities plus interest thereon or, in the alternative, for damages in an amount to be determined at trial, together with Plaintiff's court costs, expenses, and attorneys' fees, and grant such other relief as this Court deems appropriate.

Respectfully submitted,

SECURITAS FINANCIAL LAW, LLC

/s/ Marc S. Wilson
Marc S. Wilson (Mo. Bar No. 57636)
10650 Roe Avenue, #115
Overland Park, Kansas 66207
Phone: (913) 735-9732
marc@securitas.law
Counsel for Plaintiff Darren Copeland